Mr. George, nice to see you. Good morning, Your Honor. May I proceed? Yes. Thank you. Your Honors, I represent the plaintiff and appellant in this matter, and there's an awful lot of procedural brush that I'd like to clear away, not focus on certain dates, durations, et cetera, but to make one fundamental point. There was error for the district court to dismiss the federal claim here, the Magnuson-Moss Act claim. Why? Because there was an adequate pleading both in the existing First Amendment complaint as well as in the Second Amendment complaint that had been proposed to be filed. Let me take a step back on this Consumer Protection Act claim and remind the court what is at issue. Very simple facts. Plaintiff buys products from the defendant. He finds, as alleged, moisture within the insulated glass. But didn't you just jump over the most important fact right there? Did he have some belief that the windows at that time were under some warranty? And was that warranty conveyed to him so that he had a reasonable place to come to the court and say, I've been damaged because the warranty's been breached? Absolutely. And what was that, factually? Precisely where I'm going. Fortunately, this man was a pack rat, and he kept the limited warranty that he had. And I'm going to read it verbatim. The warranty said that the product, quote, has warranty on the insulated glass. And let me point out, Judge Kendall, what the warranty did not say. It had no duration limits. Or 40 percent or anything like that. And no copay. Exactly. And this is the only warranty that the man was given. So he holds on to that. And when he finds exactly what was warrantied, not to the court. But what does that mean? How can he have a reasonable belief that it means that 11 years later, how many years later, I'll get all my windows replaced? That would be a good argument on summary judgment or, better yet, trial. And, of course, here we're just talking about the viability of a pleading. But the reasonable belief was alleged in the complaint that there was no requirement for a copay, that he would not suffer the injury that he did suffer. How was he damaged by the noncompliance with the Federal law? Because he was never provided with the very warranty which defendants then tried to interpose to require a 60 percent copay. And he did pay the copay. So he is out-of-pocket that money. And this is an important point, Your Honor. Well, that's a different question than what would have happened had they displayed the warranty at the outset. Well, if he had had the warranty at the outset, Your Honor, and he was told, if you've got a problem with this and the windows are not as warrantied, you're going to have to pay a 60 percent copay. I suppose that's something that he knew going into it, and he would have no basis to object to the 60 percent copay. He was never provided that. And, of course, the Federal law here requires that that have been disclosed to him at the time of the purchase. And it wasn't. And I should be precise. We have alleged, and I don't believe there's any evidence that can be shown, that it wasn't provided at the time of the purchase. So it's very simple factual pleading. That factual pleading, again, on the first amended complaint, which was the subject of the motion for judgment on the pleadings, should not have been tossed, setting aside what the Court should or shouldn't have done with respect to the second amended complaint. And, unfortunately, the district court went astray in finding that on these facts there was a problem with pleading causation, and, therefore, that there was no Article III standing. Because the Court is well familiar, it is a very easy standard to satisfy. But you do need injury in fact. Yes. And, Your Honor, this is where I have to confess to being totally baffled by the district court's decision. Because the district court, with respect to, and I'm going to shift and talk about the state law claim, found that on these pleadings there was injury in fact. Let me be precise in pointing this out to the Court. The Court acknowledged in its order at page 15, line 1, plaintiff has alleged injury in fact. I want to make sure we're all on the same page. It was page 15, line 1. This is excerpts of record, page 15. So in the first volume of our excerpts, I see the Court's looking at this electronically. I want to make sure that we're all here. That's what we're swiping. We're just there. We're there. Indeed. You can't flip anymore. As long as the Court is not disregarding my argument. No, no, no. So. We can swipe and think in here at the same time. Perfect. Okay. So we're here, page 15, line 1. 15, top of the little page. Page 15, line 1. And why do I find that baffling? I find that baffling because the Court said eight pages earlier with respect to the first amended complaint, plaintiff has failed to plead injury in fact. And then eight pages later, quote, plaintiff has alleged injury in fact. Well, the only logical explanation would be that there's some fundamental difference between the first and the second amended complaints. And, Your Honor, there isn't. There is no viable way to explain on this record how the first amended complaint doesn't properly allege injury in fact, but the second does, as the Court says, does allege injury in fact. And I can go through, and I'd like to point the Court to the record citations for this. The first amended complaint, again, for which the district court said failed to plead injury in fact, that's paragraph 58. And the evidentiary cite there is 56, E.R. 56. And what plaintiff alleged in the first amended complaint was that as a direct and proximate result of SPW's violation of the unfair competition, the subclass members suffered an injury in fact and a loss of money by paying to SPW monies to replace their windows that they should not have had to pay. Again, trial court found that that was not injury in fact. The second amended complaint, for which the Court says there was an alleged injury in fact, similarly reads, and this is E.R. 324, paragraph 46. Plaintiffs and the members of the subclasses each suffered the identical personalized and nontrivial economic injury in fact by paying to SPW monies to replace or repair their windows that they should not have had to pay given SPW's unlawful and unfair conduct as alleged herein. Your Honors, there's no substantive difference. So either injury in fact is alleged or it isn't. And I would submit that under the Lujan test, the fairly traceable test, very straightforward, we satisfy Article III standing. I would go further, Your Honors, and I'd point out that with respect to the State of California law claim, the Business and Professions Code claim, Section 7T-200, it was manifestly error to dismiss with prejudice that claim. And we have pointed to the court the Madrazo decision out of the Second District Court of Appeal in California, which states it is a matter of California law in a very All that need be alleged is that a plaintiff paid money, the warranty was not provided, and that is sufficient to proceed with standing. But where in the record does it say that he paid money understanding that he was getting this warranty for that money? That's the critical issue under Magnuson Moss. So he needs to say I'm paying this extra $5 for this warranty, or in my contract I'm buying these windows due to this warranty. Isn't that the critical point that the judge said was missing there? No, because when he buys the windows in the first instance, he does so without having been told that there's going to be any copay. That's not part of the consideration, and, indeed, there was no warranty present. And it's only later on, after the problem with the windows, when he seeks to enforce the warranty. And, again, what that warranty may mean is a matter of fact. That has not been adjudicated here yet. But it's a matter of pleading. He's properly pleaded. I had to pay money by way of a copay that I was never told about, and that's where the problem lies. So I want to make sure, Judge Kendall, I'm answering the Court's question. But if there are no further questions, I ask that I be able to reserve a few moments to respond to opposing counsel. Roberts. Just one quick one. If you were afforded the opportunity to amend a complaint now, what would you do? I would proceed with precisely the Second Amendment complaint. But, Your Honor, I want to point out, we don't even need that Second Amendment complaint, because by reinstating the First Amendment complaint, we have all that we need to proceed with the Magnuson-Moss Act claim, and we should also be given the opportunity to proceed it with the Section 17200 State law claim, which, in any event, in a worst-case scenario, should have been dismissed without prejudice so that it could have been refiled on the merits instead of dismissing it with  Thank you. Thank you, Your Honor. Ms. Buecker, before you start, are you dividing your time, or are you just going to argue? Your Honor, I will be handling the oral argument, but I may defer a few minutes to my colleague, Mr. Warren, at the end. All right. Very good. And I was going to introduce myself, but the thousands of introductions have already been made. Your Honor, the starting point of this analysis really is to focus on the terms and conditions warranty as it's been alleged in the First Amendment complaint and the Second Amendment complaint, and to compare the allegations because the injury that's alleged in the First Amendment and the Second Amendment complaint are drastically different from one another, and that's because the First Amendment complaint focused on a bait-and-switch theory, a theory that there was a warranty provided, a warranty that counsel said, he was reading verbatim, but missed a couple of those sentences, which are critical to Judge Koh's analysis. And that warranty, if it could even be called a warranty, states, any non-tested window or door has a warranty on the insulated glass and wood part integrity only. There is not a warranty relating to the structural performance, air filtration, or water penetration. That is the terms of what this terms and conditions warranty was that Judge Koh analyzed in terms of the First Amendment complaint. And Judge Koh rightfully recognized that, one, Mr. Rooney had not alleged that he purchased Second, that Mr. Rooney was alleging that he had problems with water penetration, which is explicitly disclaimed in this warranty. And third, at the district court level, it was discussed, although it has not been raised here explicitly, that when you're looking at a warranty that has no time period whatsoever, that time period doesn't last forever. It doesn't mean that simply because there is no time limit that it lasts in perpetuity. The law is clear that, in that circumstance, the warranty length lasts for the length of the statute of limitations. So if you're Mr. Rooney, and you purchased your windows, and you believe that this terms and conditions warranty is what applies to your purchase, you're only believing it applies to your purchase if you're purchasing non-tested windows and doors, and if you don't have water penetration, and that warranty is only as good as the length of the statute of limitations. Now, taking a step back, here with Mr. Rooney, what he's alleged is that 11 years after he purchased his windows, almost 12, he starts to see that the water in his windows in his Ireland home start to fog. And it's at that point in time when he learns that this other warranty exists. Now, under operation of the law, had Mr. Rooney called Sierra Pacific and said, would you pay for the windows, under his allegations, the terms and conditions warranty, Sierra Pacific could have said no, because there was not non-tested windows and doors, because this was water penetration, and because the statute of limitations had long since expired. What Mr. Rooney received was, instead of a detriment, a benefit, because at that point in time, Sierra Pacific's warranty actually provided a copay. It paid part of the cost of replacing those windows and doors, because under the warranty that was in existence at the time of Mr. Rooney's purchase, 10 years of full coverage and 10 years of prorated coverage, which is far better than what the law would provide as a default. And so what he received was a windfall. And what Judge Koh recognized is that under that factual circumstances, as alleged in the first amended complaint, there is no Article III standing, because there is no injury, in fact, that's caused by the alleged bait-and-switch. Now, focusing on that second amended complaint, gone were the allegations of Mr. Rooney. In fact, he's no longer even a class plaintiff. Gone is the allegations of bait-and-switch altogether. Gone are the allegations even relating to the terms and conditions warranty. That is absent. And importantly, gone from that pleading is the distinction that Mr. Rooney made, which is that the SPW warranty was never provided to him. And instead, now the focus is on the Magnuson Moss failure to provide the warranty in just the right way. And Koh counsel said, or excuse me, opposing counsel said, here, what you're looking at is Magnuson Moss, which mandates disclosure of the warranty to everyone. But that's not what the Magnuson Moss Act actually provides. It doesn't require you to provide a warranty, and it actually doesn't even require you for you to give the warranty to a prospective purchaser. What it requires under the circumstances is simply that you make it available, and the implementing regulations focus on how close is the warranty to the displayed product, or is the sign in a reasonably prominent location enough so as to put someone on notice. And so you can have, be technically in compliance with Magnuson Moss even if you've never actually given a copy of your warranty to the prospective purchaser. And you can actually be in violation of Magnuson Moss even if you've sat down and read line by line of that warranty with the purchaser. And so there are technical display requirements relating to the Magnuson Moss Act, but those technical display arguments don't give rise to an injury when there's a violation unless there's some other harm that's occurred. And that's what Judge Koh was focused on here. Judge Koh looked at the Second Amendment complaint and said, where is the harm? Where is the causal connection? And on the First Amendment complaint, she said, I don't see the injury. There is no injury, in fact, because what Mr. Rooney received is a windfall. And that's why she said there was no injury, in fact, under the FAC. But under the SAC, under the Second Amendment complaint, Judge Koh looked at the standing requirements where it said injury, in fact, but she also noted another second critical component of standing, and that is the causal connection. And that's where Judge Koh, on the Second Amendment complaint understanding, focused the inquiry, said, look, there isn't a connective tissue between paying money 20, 30 years later on a copay and the failure to display the warranty 6 inches or 12 inches away from the product or put to the sign in a prominent enough location. There's no connective tissue. This is not a chain, a link in the chain. There's nothing that combines and links the two together. And so Judge Koh recognized that in that circumstance, the Second Amendment complaint failed to allege facts that established standing. And looking at that set of facts, Judge Koh asked, point blank, in the hearing, what set of facts can you allege? What facts can you put in your complaint to establish standing? And the plaintiffs had, obviously, the opportunity to do that in their original complaint. They had an opportunity to do it in their First Amendment complaint. They had an opportunity to try to do it in their Second Amendment complaint, because at the time, the motion for judgment on the pleadings was pending. They knew the challenge. They understood the contours of the law. They had in their reply brief a proffer to make a Third Amendment complaint at oral argument. There was further discussion. Judge, please tell me, what can I allege? What do you think creates standing? And I'll try to allege it if it's plausible. And at that point, Judge Koh recognized rightfully that what this was was plaintiffs searching, grasping for some sort of basis for an injury when there was none. And after having one, two, three, four, five opportunities and a lengthy oral argument where Judge Koh asked, show me in your pleading where is the injury? Tell me what facts you could allege that would be different, that would bring you within the confines of the standing doctrine, plaintiffs had none. And the Ninth Circuit court jurisprudence is clear that when there are repeated failures to cure a complaint, that the court is well within its discretion in denying leave to amend, well within its discretion. And here, there was never articulated any set of facts that would bring that injury within the confines of Article III standing. And today, I heard opposing counsels state we would intend to move forward right on the second amended complaint. There's no suggestion that there is any other set of facts that would possibly bring them within the confines of the standing doctrine. It's the same thing that was before Judge Koh. Judge Koh said, tell me. The plaintiffs couldn't. And that's because they can't. Kagan. They suggested today that somehow it would be saved by the Madrazo case, that motorcycle hang tank case, although I realize there they actually sold him a different bill of goods, so to speak. So I guess the question is, in your view, how does Madrazo fit into the appeal? Madrazo doesn't fit into the appeal because it's, frankly, distinguishable from our case. It has really no bearing or relationship. What they were talking about in Madrazo is a vehicle code regulation which made it illegal to charge dealer charges that weren't disclosed on a hang tank. And so at the time when the plaintiff in that action purchased their vehicle, they paid charges that were illegal in and of itself under the statutory regime, which required actual disclosure of those charges on the tank itself. Here we have a Magnuson Moss Act claim, which doesn't make the sale of a window without a warranty illegal. It's exactly the opposite. It doesn't even require that you provide a warranty. And, in fact, it doesn't require that you actually even read that warranty or hand that warranty over. And so the statutory regimes that we're looking at and the structures are completely different in terms of what their overall intent is. And so in Madrazo, when they were looking at it and they said, we have a plaintiff here who has paid illegal charges, charges that under the law could not be charged, and we have a situation where the law required that that information be provided to plaintiff prior to the purchase, we find that in those two specific factual scenarios that there is some an injury because they've paid something they didn't otherwise have to pay. That analogy is not applicable here to the Magnuson Moss Act, where plaintiffs are saying that they didn't – it's not that they didn't disclose the warranty. It's that they didn't display the warranty in just the right way. They didn't put the poster close enough to the window product or the warranty itself close enough to the display case. And so the focus here is not on whether there's anything that makes sailing a window illegal without a warranty. That's not what Magnuson Moss Act does, but that is what the vehicle code does. The focus here is on whether it wasn't displayed in just the right way, and that is the gravamen of the second amended complaint. I want to also emphasize and touch on the court's discretion here because a lot was said in the briefing, as opposing counsel noted at the outset, about discovery deadlines, depositions, all sort of mudslinging as it relates to discovery. And there the court was in the best position to look at the facts. The court had lived the facts, had been well briefed in the facts, knew the discovery disputes, and found that those discovery disputes didn't give rise to any sort of And to put that in context, the timing of that filing of the amended complaint happened on the same day that plaintiffs were moving for class certification, and the hearing on that motion was set with one month left for discovery, just one month. And a class action where we have allegedly significant amount of plaintiffs and damages and allegations, what plaintiffs were proposing to do at the same time that they were moving for class certification was to basically change the whole entire case from a bait and switch focused on a terms and conditions and replacement SPW warranty, to instead a class action focused on how the warranty was displayed in the showrooms. How long did the litigation, the discovery period, go on up until the point that you that time did not include a Magnuson-Moss Act claim. The Magnuson-Moss Act claim didn't come into play until December of 2010. And between December 2010 and July of 2011, we were conducting discovery on the allegations in the first amended complaint. That was the focus of that entire time frame. And then it was only on the eve of class, well, it wasn't the eve, it was class certification briefing, and one month out from discoveries closed, that instead we were substituting a brand new complaint that Judge Coe recognized differed materially in at least five, and I would submit perhaps more, important and material respects. Well, the class representatives were different as well. The class representatives were different. The theories were different. The causes of action were different. The discovery that would have been required would have been going to the showrooms, taking measurements, taking pictures, documenting locations, speaking with class members. Did you receive the warranty? Confirm you received the warranty. Did you see the sign? Was it prominent enough to you? Was it close enough to the product to catch your attention? These are the types of issues that would have been in play vis-a-vis the second amended complaint that Judge Coe recognized under the circumstances. That's undue delay. That's not diligent. That would be prejudicial to Sierra Pacific to have to, within a one-month time frame, try to conduct the type of discovery that's necessary to defend themselves in a class action suit. And in the last six months leading up to the motion for judgment on the pleadings, did the plaintiff ever say to the judge, Judge, our litigation, our discovery has changed considerably, we have a whole new animal on our hands that we're going to be filing this amended complaint that's now going to take into account the lack of display or anything like that? No, Your Honor. There was correspondence that was made between plaintiffs and defense counsel where plaintiffs stated that they intended at some point to move on an amended complaint, although the amended complaint that they outlined in that correspondence was different than what was ultimately filed. And in terms of informing the Court, the answer to that is no. So we were in a situation where here we were in July. The Court had been working with us in trying to formulate a workable discovery order that made sense in light of class certification and fact discovery, and the plaintiff's discretion said, no, this is too late. It's too late to be seeking in the 11th hour an amendment of the complaint when you've already had numerous opportunities to do so. And that, Judge Koh, being in that situation, having gone through all the discovery, she knew, she was in the best position. It's just like as in this Court. For example, plaintiff's counsel arrives late this morning. How late? A couple minutes, maybe. Does the plaintiff's have an excuse? Traffic? This Court would be in the best position to judge whether that's a reasonable under the circumstances and whether that's a justifiable excuse. Here, instead of looking at just a couple minutes this morning and trying to live that, we've got Judge Koh who's living through over a year and a half. She's got every single discovery motion on the tip of her fingers. She's been through all of the briefing, all of the letters, all of the discovery requests. She knows because every single piece of it she's been intimately involved with and ruling on. And so we've got a situation where the best person to judge whether that filing was late is Judge Koh herself. And that's why I'm going to ---- Kagan, do you think she could have, even if there was no damage, do you think just discretionarily, it's not an abuse of discretion for her not to allow them to file the amended complaint just based upon her control of her discovery schedule? I think Judge Koh was well within her discretion to do what she did, and that's because of the fact that not only had plaintiffs had multiple opportunities to file amended pleadings, she had given them multiple opportunities to try to articulate what set of facts ---- Right. But what if they really had a claim? Let's go out of your argument and go to his argument. I really do have a claim. Are you saying that would be an abuse of discretion? An abuse of discretion to do that. If they did have a claim. No, Your Honor. It would not be an abuse of discretion because the trial court, it's made clear that under Ninth Circuit authority that when there has been multiple attempts to amend and has not fixed, the court is within its discretion to say too little, too late, we're done. And that is well established in our jurisprudence. And so there you've got the discretion of the court to say you've tried enough, you haven't been successful, this complaint is futile, amendment is not going to help you. And, in fact, even if you could, if we spent another year or two or three conducting discovery to see if you could find something to stick, that's not the way our system of jurisprudence works. This is not a fishing expedition. This is not an inquisition. This is not where we try to sit around and find something that we can grasp onto and hope that perhaps we can come up with some sort of injury. You've had one chance, two chances, three chances, four chances. I don't think she said inquisition, did she? Pardon me? I don't think she said inquisition, did she? No, that was my word. Yeah. She said floundering and failing about looking for a cause of action. Thank you, counsel. Yeah. Thank you, Your Honor. Thank you, Your Honor. I'm not going to respond to the shrill argument, but what I am going to respond to is this. On the procedural point, this is really important. The first discovery was responded to in September of 2010. Boilerplate objections, a half banker's box of documents, followed by 161 documents. Six months later, they produced 74,000 documents. That's in March of 2011. And I hesitated to bring up anything procedural because the court obviously has a decided preference to deciding things on the merits, and that's as it should be. I'd like to make the following points, though. What I think the court largely heard was a closing argument, perhaps to a jury or to a fact finder. On 11 years after the purchase, on the windows being in Ireland, on what might have been better, on whether there was a windfall, all we're dealing with here is pleading. Was there proper pleading? Second of all, there was a large focus on the second amended complaint. And as I tried to make clear, we can put that aside. I'm just focusing on the first amended complaint. Judge McEwen asked about Madrazo. There was no viable distinction that was proffered by counsel. Madrazo involves a failure to have a ---- Kagan. I heard one distinction that you haven't really addressed, and that is, well, there are several distinctions. One is you have very specific law that requires certain things. And there, there was a relationship between what was on the hang tag, which didn't include the charges that got imposed on the motorcycle purchaser. Right. And I think that she mentioned that point. And she also mentioned that you're also dealing with very specific law. I mean, there you had a direct causation. And the question here, and the question Judge Koh addressed, is where is the causation that that was missing? But why, Your Honor, is that a viable distinction? Because if in Madrazo, if I go and I buy a motorcycle, and there's no hang tag on it, so that I don't know certain information I'm supposed to know, and I end up paying money. Because in Madrazo, it's required by law. And Magnuson Moss? Magnuson Moss. You know, you're reading into Moss. It's actually Moss-Magnuson, but Magnuson Moss, Moss-Magnuson, whichever. You're reading in, I believe, to that statute a substantive right that doesn't exist. That there has to be disclosure made. And the Act requires that the disclosure, the warranty, either be present or that it be readily made available, that the identity of that be made available. And neither was the case here. It was pleaded that there was no disclosure or display of the warranty that later on the defendant sought to interpose. And that's problematic, because just as in Madrazo ---- Well, the warranty was different. I mean, what you ---- Yes. How do you respond to the argument that, in fact, simply due to the passage of time and whether due to corporate policy otherwise, that they offered up this other warranty that, in fact, turns out to be a windfall compared to the beginning transaction? But is it a windfall? And in one of the documents that was produced literally the evening before the reply that was due in the motion for judgment on the pleadings, it's a two-page memorandum that admits, in which defendant admits that it has not complied with the law. We know that now as a concession. And the problem here is whether, yes, certain facts are different, but I think the violated here is this. I'm going to put it as simply as I can. When somebody is forced to pay money pursuant to an undisclosed call to warranty, they have suffered the requisite injury to proceed with a claim. Did you ever allege that you got non-treated windows? I want to be precise about what was alleged. In the complaint ---- The question is yes or no on that one, yes or no. I'm sorry. On which type of windows? Non-treated windows. No, we allege non-insulated windows. And that's ---- and this, I'd like to read the exact language. Allegation. Paragraph 17, Your Honor, First Amendment complaint. Moisture within the insulated glass. Limited warranty. The one that we did get, product, quote, has warranty on the insulated glass. It's a match. If we look at the merits of this case, there ought to have been a merits-based adjudication of this, both as to the federal claim and most certainly on the state claim rather than the state claim being dismissed, quote, with prejudice. Again, with what's nothing less than an internally contradictory order. There is injury in fact. There isn't injury in fact. So, Your Honor, with that, unless there are any further questions, I ask the Court to seriously look at whether or not, again, apart from the procedural morass, which is an unfortunate background to come to the Court on, whether there ought to have been a merits-based adjudication of this rather than a motion for judgment on the pleadings, which we believe is not tenable. Thank you, counsel. Thank you very much. The case just heard will be submitted for decision. Thank you both for your arguments.
judges: Kendall, Thomas, McKeown